IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Kirby McZeke, | ) | Civil Action No.: 4:10-cv-02944-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Horry County, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Kirby McZeke ("Plaintiff") filed the above action against her former employer, the Horry County Magistrate's Office in Loris, South Carolina ("Defendant"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2003 & Supp. 2010). On January 23, 2013, Defendant filed an Amended Motion for Summary Judgment. Plaintiff filed her Response on February 13, 2013. This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III.[1] In the R&R, the magistrate recommends that the Court deny Defendant's Amended Motion for Summary Judgment. Defendant timely filed objections to the R&R, to which Plaintiff filed a reply. For the following reasons, this Court rejects the R&R and grants Defendant's Amended Motion for Summary Judgment.

### **Background**[2]

In 1977, Plaintiff, a black female, began working at the Horry County Magistrate's Office

---

[1]    In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Rogers for pretrial handling.

[2]    The facts of this case, including citations to the record, are discussed thoroughly in the magistrate's R&R. [*See* R&R, Doc. # 60, at 1–9.] Although the Court rejects the R&R's recommendation and analysis, no party takes issue with the magistrate's factual recitation.

in Loris (the "Magistrate's Office") on a part-time basis under a job training program. Plaintiff worked in a different job outside Horry County from 1980 until 1984 and then returned to the Magistrate's Office as a full-time Clerk until her termination in August 2009. Judge Mark Harris, a white male, assumed the Loris Magistrate's job on July 1, 2008. In September 2008, after two incidents, Judge Harris issued Plaintiff a two-day suspension and specifically warned Plaintiff she would be terminated if, in the future, she divulged information on a general sessions bench warrant. On August 18, 2009, after divulging information on a general sessions bench warrant, Judge Harris determined that he would give Plaintiff the option to resign her position, which would not foreclose future employment with Horry County, or face termination. The following day, Plaintiff informed Judge Harris that she would not voluntarily resign. He informed her that she was terminated and presented her with a termination letter.

## Standard of Review

The magistrate judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the magistrate judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to

a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("*[D]e novo* review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation."). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins*. Co., 416 F.3d 310 (4th Cir. 2005). Furthermore, in the absence of specific objections to the R&R, this Court is not required to give any explanation for adopting the recommendation. *See Diamond*, 416 F.3d at 315; *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

## Discussion

Because Plaintiff has not presented any direct evidence of race discrimination, she proceeds under the burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that burden-shifting scheme, Plaintiff has the initial burden to establish a *prima facie* case of race discrimination by showing (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) that the position remained open or was filled by similarly qualified applicants outside the protected class. *Id.; see also White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Here, all parties concede that Plaintiff is able to establish the first, second, and fourth elements of her *prima facie* case.

If Plaintiff succeeds in establishing her *prima facie* case, the burden then shifts to Defendant to produce "a legitimate, nondiscriminatory reason for the adverse employment action." *Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 285 (4th Cir. 2004). Assuming Defendant meets its burden of production, "the burden shifts back to [ ][P]laintiff to prove by a preponderance

of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.' " *Id.* (quoting *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 143 (2000)).

As to Plaintiff's *prima facie* case, the magistrate held that there is a dispute of fact as to whether Plaintiff was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action. Defendant objects, claiming that the magistrate failed to recognize the plain language of the first disciplinary report from Judge Harris to Plaintiff. [Obj., Doc. # 75, at 1–4.] Plaintiff, in support of the magistrate's finding, argues that nothing "Judge Harris said or did ever provided Plaintiff with knowledge as to what [his] expectations were." [Pl.'s Reply, Doc. # 84, at 2.][3] The disciplinary report listed Plaintiff's misconduct relating to disclosing arrest warrants as "[d]ivulging or misusing confidential information." [Disciplinary Report, Doc. # 39-3, at 1.] The supervisor's statement noted "Ms. McZeke divulged information on a General Sessions Bench Warrant to the defendant" and listed the consequence should the incident occur again as "TERMINATION." [*Id.* at 2.] Contrary to Plaintiff's argument, this certainly constitutes something from Judge Harris to Plaintiff regarding Judge Harris's expectations. Further, while the magistrate held that the disciplinary report put Plaintiff on notice that she should not reveal *the existence* of a bench warrant, the Court agrees with Defendant that the plain language of the disciplinary report put Plaintiff on notice that she was not to divulge

---

[3] Plaintiff also attempts to argue that the incident leading to Plaintiff's initial suspension occurred before Judge Harris began his position. [Pl.'s Reply, Doc. # 84, at 2.] This argument is somewhat incomplete. Plaintiff was suspended in September 2008, two months after Judge Harris had started, for conduct that began just prior to Judge Harris's arrival.

*information regarding* bench warrants.[4]

The record shows that on April 20, 2009, Plaintiff prepared an arrest warrant in a criminal matter involving drug charges and a confidential informant. A few days later the criminal defendant's mother – who was friends with Plaintiff – called Plaintiff and told her that the cops came by her house with an arrest warrant for her son, searched the premises, and said to have her son contact them. Plaintiff told the defendant's mother that the warrant involved drug charges – a fact unknown by the defendant's mother. In her deposition, Plaintiff admitted that she was fully aware that the warrant involved drug charges and a confidential informant. [Pl. Dep., Doc. # 39-6, at 126:10–25.] Further, Plaintiff's description of her conversation with the criminal defendant's mother is telling:

> Q.    All right. She asked you what it was about. What did you tell her?
>
> A.    I told her - - she asked me in confident [sic] what it was about and I told her, you know.
>
> Q.    What did you tell her?
>
> A.    I told her it was a drug warrant. That's what I told her.

[*Id*. at 137:13–19.] Thus, Plaintiff plainly acknowledged divulging information regarding a bench warrant. While not made directly to a defendant, the information was made directly to a defendant's

---

[4]    Defendant alleges that during a staff meeting Judge Harris told the employees to keep all matters confidential. Plaintiff claims Judge Harris never communicated these expectations. To be sure, the circumstances surrounding this supposed meeting are unclear. However, the disciplinary report plainly listed the violation as "[d]ivulging or misusing confidential information," clearly explained that this misuse came by way of Plaintiff having "divulged information on a General Sessions Bench Warrant to the defendant," and listed the consequence should the incident occur again as "TERMINATION."[Disciplinary Report, Doc. # 39-3, at 1–2.] No party argues that Judge Harris modified his stance on confidentiality subsequent to this disciplinary report. To the extent Judge Harris's confidentiality requirement was different from Plaintiff's previous supervisor, no party disputes that Judge Harris was free to run the logistics of his office as he saw prudent.

5

mother,[5] who was not a member of law enforcement or court staff. Despite Plaintiff's argument to the contrary, Plaintiff acknowledged in her own deposition that the question posed to her regarding the nature of the warrant was made in confidence.[6] Therefore, in discussing both the issuance of the bench warrant and its content, Plaintiff fell below Judge Harris's reasonable and stated expectations. The consequence of such failure was clearly listed in the disciplinary report as termination. Plaintiff has failed to show satisfactory job performance and thus has failed to establish a *prima facie* case of race discrimination. Because Plaintiff has failed to establish a a *prima facie* case, the Court need go no further in its analysis of Plaintiff's case and Defendant's remaining objections are moot.

## Conclusion

The Court has thoroughly analyzed the entire record, including the R&R, objections to the R&R, and the applicable law.  The Court, having conducted the required review of all of the objections and Plaintiff's reply, rejects the recommendation in the R&R for the reasons discussed herein.

---

[5]  Plaintiff attempts to argue that summary judgment is inappropriate because Judge Harris believed Plaintiff contacted the defendant himself, and thus there is a dispute of fact as to whether she did the conduct for which she was terminated. This argument is unavailing. First, it is undisputed that Plaintiff at least contacted the defendant's mother and divulged information about the bench warrant. As discussed herein, this action shows Plaintiff was not performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action. Second, Plaintiff overstates Judge Harris's suspicions about Plaintiff's contact. Judge Harris testified in his deposition that it was his "belief that [Plaintiff] contacted this defendant *or a member of his family*." [*Id*. at 114:18–20 (emphasis added).] Additionally, Judge Harris testified that even if she only contacted the mother "there would be something wrong with [that]."  [*Id*. at 116:18–19.]

[6]  The Court notes that, according to Judge Harris, while the defendant was at-large, the confidential informant who was involved in making the charge contacted the officer involved in the case. The informant told the officer that the defendant had contacted him and suspected that he was participating with law enforcement in securing the defendant's arrest. [Harris Dep., Doc. # 39-7, at 107:17–108:7.]

6

**IT IS THEREFORE ORDERED** that Defendant's Amended Motion for Summary Judgment [Doc. # 56] is **GRANTED**, and this case is **DISMISSED**, *with prejudice*, in its entirety.

**IT IS SO ORDERED**.


s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
September 27, 2013

7